**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMINAH SHABAZZ, *in her own right and as Administratrix of the* ESTATE OF LEON C. LITTLE 1305 Marlkress Rd. Cherry Hill, NJ 08003, <br><br> Plaintiff, <br> v. <br><br> TEN UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF PRISONS AT OTISVILLE FCI, *in their individual capacities* and UNITED STATES OF AMERICA <br><br> Defendants. | C.A. No.: <br><br> **COMPLAINT** <br><br> **TRIAL BY JURY DEMANDED** |

Aminah Shabazz in her own right and as *Administratrix* of the Estate of Leon C. Little, submits the following Complaint WITH DEMAND FOR TRIAL BY JURY and avers as follows:

**INTRODUCTION**

1. This action is brought pursuant to the Federal Tort Claims Act 28 U.S.C. § 2671 *et seq.* (the "FTCA"); and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) to redress the knowing, willful, wanton, reckless, outrageous, recklessly indifferent and negligent acts that caused the agonizing death of Decedent, Leon C. Little, an inmate at Otisville FCI. The late Mr. Little was prescribed a medication believed to be Ozempic or similar GLP-1 receptor agonist – a type of drug known to carry a risk of severe blood clotting. On January 24, 2024, Decedent developed a large clot in his leg. In excruciating pain, he cried out for help, desperately pleading for hours in pain and fear. His cries were callously ignored by unknown agents until Decedent died. An autopsy confirmed the cause – deep vein thrombosis in his right leg, leading to a fatal bilateral pulmonary embolism. *Exhibit A* (the "Autopsy"). His death was preventable.

**PARTIES, JURISDICTION, VENUE**

2. Plaintiff Aminah Shabazz was the lawful wife of Decedent. On June 10, 2024, she was granted Letters of Administration in the Surrogate's Court of the State of New York, Orange County, File #: 2024-112. She brings claims in her own right and as *Administratrix of the* Estate of Leon Little.

3. The United States of America is named as Defendant pursuant to the Federal Tort Claims Act, § 28 U.S.C. 1346(b).

4. On January 30, 2025, Plaintiff's Administrative Claim No. TRT-NER-2025-02289 was received by the Federal Bureau of Prisons. The claim was formally denied in writing by letter dated July 8, 2025, from A.M. Johnson, Regional Counsel, Federal Bureau of Prisons, Northeast Region. Accordingly, Plaintiff has exhausted her administrative remedies pursuant to FTCA § 2675. In addition, this action is timely commenced within six months of that denial and within two years of the death of Decedent.

5. Defendants Ten Unknown Agents of the Federal Bureau of Prisons are employees/agents of the Federal Bureau of Prisons at Otisville FCI. They are correctional officers; shift commanders; unit managers; medical personnel (doctors, nurses and other practitioners); and other staff members who were responsible for or had notice/knowledge of Decedent's medical crisis. These Defendants cannot be identified by Plaintiff after reasonable diligence. Such diligence includes, but is not limited to, FOIA Request #2024-03248, submitted in or about April 2024. Defendant United States stated that a response would be provided on or before January 25, 2025; no response was provided.

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as Defendant).

7. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1391 and 1402 because the act or omission complained of occurred in the Southern District of New York.

**FACTS**

8. At all times material, Decedent, Leon C. Little was incarcerated at FCI Otisville.

9. Upon information and belief, while an inmate and in the care and custody of Defendants, Decedent was prescribed Ozempic or similar GLP-1 receptor agonist medication.

10. A known side effect of the medication prescribed to Decedent is the risk of blood clots and related thrombotic events, especially in individuals with obesity or other risk factors.

11. On or about January 24, 2024, Decedent began to experience excruciating pain in his lower right extremity, consistent with the symptoms of deep vein thrombosis.

12. Decedent cried out, repeatedly, for hours, pleading for medical attention and relief.

13. Defendants heard or were otherwise aware of Decedent's distress.

14. Defendants failed to take any action to assess or treat Decedent.

15. A significant portion of the blood clot from the deep vein thrombosis broke off and caused Decedent to suffer a pulmonary embolism. Decedent died that night.

16. On January 24, 2024, the Autopsy was performed by Jennifer L. Roman, D.O.

17. The Autopsy confirms (*Exhibit A*, p.4):

> The bilateral main pulmonary arteries show tan to dark red, firm, occlusive intraluminal thrombi, extending to the the large/medium caliber vessels. The deep veins of the right leg show dark red focally tan, slightly firm, partially to fully occlusive thrombi of the popliteal area and in the medium/small caliber veins of the calf muscle.

18. There was a large, dangerous clot behind the right knee of decedent. They partially or fully blocked blood flow to his leg, causing Decedent excruciating conscious pain.

19. It was clear, to Decedent and to Defendants, that Decedent was at risk of death from his condition. Nevertheless, the Unknown Named Agents callously allowed Decedent to writhe in fear and agony until a piece of the clot broke off and entered Decedent's lungs.

20. Too late, and after Decedent was irreversibly lost, Defendants attempted to resuscitate Decedent.

21. Had Defendants acted timely when Decedent was in obvious distress, Decedent would not have died from the blood clots.

22. Decedent's pain, suffering, and gruesome death were a direct result of Defendants' knowing, willful, wanton, reckless, and negligent conduct which also constitutes deliberate indifference.

23. As a further direct and proximate result of Defendants' wrongful conduct, Plaintiff and Decedent's heirs have suffered financial losses and damages for which Defendants are liable.

24. The heirs of Decedent have suffered damages due to the wrongful death of Decedent, including but not limited to:

   a. Loss of Decedent's companionship, guidance, and counsel;

   b. Emotional distress and mental anguish suffered as a result of Decedent's death;

   c. Loss of financial support, services, and assistance that Decedent would have provided to his family

   d. Loss of future consortium, society, and the ability to enjoy life's pleasures with Decedent;

   e. Funeral, burial, and other related expenses; and

   f. Such other damages as will be adduced in the course of discovery.

**COUNT I    FTCA**

25. Repeats and realleges paragraphs 1-24 as if set forth at length herein.

26. Defendants owed Decedent a duty to provide essential medical care.

27. Defendants breached that duty.

28. As a direct and proximate result of Defendants' misconduct, Decedent was caused to suffer in agony and to die.

29. As a direct and proximate result of Defendants' misconduct, Plaintiff and the heirs of Decedent have suffered injury, as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, plus such other relief as this Court deems just and proper.

**COUNT II    BIVENS CLAIM (Eighth Amendment Deliberate Indifference)**

30. Repeats and realleges paragraphs 1-29 as if set forth at length herein.

31. Decedent had a clearly established Constitutional right under the Eighth Amendment to be free from cruel and unusual punishment.

32. Defendants Ten Unknown Agents were agents of Defendant United States and were acting under color of federal law.

33. Defendants Ten Unknown Agents held custodial or supervisory authority over Decedent.

34. Defendants Ten Unknown Agents had actual knowledge, or in the alternative, notice of, Decedent's medical distress.

35. Decedent was visibly and audibly in agony for hours before his death, crying out for help, reporting severe leg pain, and otherwise exhibiting signs of a medical emergency.

36. Decedent was on medication, prescribed by Defendants, which carried a risk of the very condition that Decedent suffered from.

37. Despite the obvious and escalating medical crisis, Defendants failed to summon emergency assistance, initiate diagnostic care, or take other action before Decedent entered cardiac arrest.

38. Defendants acted with subjective awareness of a substantial risk of serious harm and consciously disregarded that risk.

39. Objectively, the deprivation of timely medical care in response to the large blood clot in Decedent's leg was a serious and urgent condition that required immediate medical care.

40. The context of this *Bivens* claim is in no way distinguishable from *Carlson v. Green*, 446 U.S. 14 (1980), whereupon the Supreme Court recognized a *Bivens* cause of action for failure to give an inmate proper medical attention, causing the inmate's death.

41. As a direct and proximate result of Defendants' knowing, willful, wanton, reckless, outrageous and deliberately indifferent conduct, Decedent suffered greatly and died and agonizing death.

42. As a direct and proximate result of Defendants' knowing, willful, wanton, reckless, outrageous and deliberately indifferent conduct, Plaintiff and Decedent's heirs suffered injury, as set forth above and incorporated herein by reference.

43. Plaintiff and Decedent's heirs are entitled to punitive damages for Defendants' knowing, willful, wanton, outrageous and deliberately indifferent conduct.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants, plus such other relief as this Court deems just and proper.

**COUNT III   WRONGFUL DEATH**

44. Repeats and realleges paragraphs 1-43 as if set forth at length herein.

45. Plaintiff was duly appointed *Administratrix* of the Estate of Leon Little.

46. Plaintiff and Decedent's heirs are entitled to wrongful death damages under the laws of the State of New York for Defendants' misconduct as alleged above.

47. As a direct and proximate result of Defendants' culpable conduct, as set forth above and incorporated herein by reference, Plaintiffs and decedent's heirs have suffered harm cognizable by the wrongful death statute, NY Estates, Powers and Trusts Law § 5-4.2.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants, plus such other relief as this Court deems just and proper.

**COUNT IV   SURVIVORSHIP**

48. Repeats and realleges paragraphs 1-47 as if set forth at length herein.

49. Plaintiff was duly appointed *Administratrix* of the Estate of Leon Little.

50. Plaintiff and Decedent's heirs are entitled to survivorship damages under the laws of the State of New York for Defendants' misconduct as alleged above.

51. As a direct and proximate result of Defendants' culpable conduct, as set forth above and incorporated herein by reference, Decedent experienced conscious pain and suffering and other harm compensable under a survivorship theory.

WHEREFORE, Plaintiff demands compensatory and punitive damages against Defendants, plus such other relief as this Court deems just and proper.

***TRIAL BY JURY DEMANDED***

Respectfully submitted,

CREECH & CREECH, LLC

/s/ Timothy P. Creech
TIMOTHY P. CREECH
1835 Market St., Suite 2710
Philadelphia, PA 19103
(215) 575-7618; Fax: (215) 575-7688
Timothy@CreechandCreech.com

DATED:   July 21, 2025